**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND**

| | |
|---|---|
| BRADLEY HERTZ, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| MONOGRAM RESIDENTIAL TRUST, INC., MARK T. ALFIERI, DAVID D. FITCH, TAMMY K. JONES, JONATHAN L. KEMPNER, W. BENJAMIN MORELAND, E. ALAN PATTON, and TIMOTHY J. PIRE, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

Civ. No. _____

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT FOR VIOLATION OF <u>SECTIONS 14(a) AND 20(A) OF THE SECURITIES EXCHANGE ACT OF 1934</u>**

Plaintiff Bradley Hertz ("Plaintiff"), by his attorneys, alleges upon information and belief, except for her own acts, which are alleged on knowledge, as follows:

**INTRODUCTION**

1.     Plaintiff brings this action on behalf of himself and the public stockholders of Monogram Residential Trust, Inc. ("Monogram" or the "Company") against Monogram's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2.     On July 4, 2017, Monogram and Greystar Real Estate Partners ("Greystar") announced that they had entered into a definitive agreement ("Merger Agreement") under which Greystar's new fund, Greystar Growth and Income Fund, LP ("Growth and Income Fund"), will acquire all of the outstanding shares of Monogram in an all-cash transaction (the "Proposed Transaction").  If consummated, Monogram stockholders will receive $12.00 in cash for each

share of Monogram common stock. The Proposed Transaction has an enterprise value of approximately $3.0 billion.

3.     On July 28, 2017, Defendants issued materially incomplete and misleading disclosures in the Schedule 14A Definitive Proxy Statement (the "Proxy") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Proxy is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.

4.     Accordingly, Plaintiff alleges herein that Defendants have breached their fiduciary duties and violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331–32, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

6.     The Court has personal jurisdiction over each of the Defendants because each either is a corporation that is incorporated under the laws of, conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because: (a) one or more of the Defendants either resides in or maintains executive offices here; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect here.

## PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of Monogram common stock.

9.      Monogram is a corporation organized and existing under the laws of the State of Maryland.  Monogram is focused on the acquisition, renovation, leasing, and management of boutique multi-family properties in select markets in the United States.  Monogram invests in stabilized operating properties and properties in various phases of development, with a focus on communities in select markets. As of March 31, 2017, Monogram's portfolio includes investments in 49 multifamily communities in 10 states comprising 13,674 apartment homes. The Company maintains its principal executive offices at 5800 Granite Parkway, Suite 1000, Plano, Texas, 75024. Monogram common stock trades on the New York Stock Exchange under the ticker symbol "MORE."

10.      Defendant Mark T. Alfieri ("Alfieri") has served as Chief Executive Officer of the Company since June 30, 2014, as a director since May 2014, as President since July 31, 2013, and as Chief Operating Officer since the inception of the Company in 2006.

11.      Defendant David D. Fitch ("Fitch") has served as a director of the Company since May 2014.

12.      Defendant Tammy K. Jones ("Jones") has served as a director of the Company since April 2016.

13.      Defendant Jonathan L. Kempner ("Kempner") has served as a director of the Company since November 2008.

14.      Defendant W. Benjamin Moreland ("Moreland") has served as a director since May 2016.

15. Defendant E. Allen Patton ("Patton") has served as a director of the Company since November 2006 and Chairman of the Board since September 20, 2013.

16. Defendant Timothy J. Pire ("Pire") has served as a director of the Company since March 2016.

17. Defendants Alfieri, Fitch, Jones, Kempner, Moreland, Patton, and Pire are collectively referred to as Individual Defendants and/or the Board.

18. Non-party Greystar is a private South Carolina-based corporation owning, developing, and managing in multifamily apartment properties. Greystar is headquartered at 18 Broad Street, Suite 300, Charleston, South Carolina, 29401.

19. Non-party GS Monarch Parent, LLC ("Parent") is a Delaware limited liability company formed for the purpose of effectuating the Proposed Transaction.

20. Non-party GE Monarch Acquisition, LLC ("Acquisition Sub") is a wholly-owned subsidiary of Parent and a Delaware limited liability company formed for the purpose of effectuating the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

21. For purposes of the breach of fiduciary duties claims, Plaintiff brings this action individually and as a class action on behalf of all holders of Monogram stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendant.

22. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

23.     The Class is so numerous that joinder of all members is impracticable.  As of June 30, 2017, Monogram had 167,031,843 shares of common stock outstanding.  These shares are held by thousands of beneficial holders who are geographically dispersed across the country.

24.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.   The common questions include, inter alia, the following:

        a.      whether Defendants have violated Sections 14 and 20 of the Exchange Act in connection with the Proposed Transaction; and

        b.      whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

25.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

26.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

27.     The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

28.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

29.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class a whole.

30.     Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

31.     On July 4, 2017, Monogram issued a press release announcing the Proposed Transaction. The Press Release read in relevant part:

> Plano, Texas – July 4, 2017 – Monogram Residential Trust, Inc. (NYSE:MORE), an owner, operator and developer of luxury apartment communities with a significant presence in select coastal markets, today announced that it has entered into a definitive merger agreement to be acquired by a newly formed perpetual life fund, Greystar Growth and Income Fund, LP, led by Greystar Real Estate Partners and its initial founding capital partners, affiliates of APG Asset Management N.V., GIC, and Ivanhoé Cambridge, in a transaction valued at approximately $3.0 billion, including debt to be assumed or refinanced.

> Under the terms of the merger agreement, which was unanimously approved by Monogram's Board of Directors, Monogram's stockholders will receive $12.00 per share in cash. This represents a premium of approximately 22% to Monogram's unaffected closing stock price on July 3, 2017, the last trading day prior to the public announcement of the transaction.

> The $3.0 billion aggregate transaction value includes Monogram's share of its two institutional co-investment joint ventures with PGGM and NPS. The PGGM joint venture will be restructured, and the joint venture interests held by NPS will be purchased by Greystar pursuant to a separate assignable purchase and sale agreement for approximately $0.5 billion, subject to certain adjustments at closing, including payment of the NPS joint venture's share of debt to be assumed or refinanced in connection with the transaction.

> "We are pleased to have reached this agreement, which maximizes value at a substantial premium to our existing share price," said Alan Patton, Monogram's Chairman of the Board of Directors. "We are confident that today's announcement represents the best path forward for all of Monogram's stockholders."

"This landmark is the result of Monogram's success at executing and delivering on strong operations, innovative development programs and investment strategies in conjunction with skillful market timing," said Mark Alfieri, Monogram's Chief Executive Officer, President and Chief Operating Officer. "The interest we received from this sophisticated group of investors demonstrates that our targeted focus on building our portfolio with high quality Class A assets in select core markets has been recognized and our stockholders and joint venture partners are rewarded with this successful outcome."

"We are excited to add Monogram's high quality assets in some of the best markets in the country as the seed portfolio for Greystar Growth and Income Fund, LP, our flagship core-plus perpetual life vehicle," said Bob Faith, the Founder, Chairman and Chief Executive Officer of Greystar. "The collective strength and experience of our high-quality investment partners are second to none, and we look forward to completing this transaction and further expanding Greystar's U.S. multifamily platform."

The transaction, which is expected to close in the second half of 2017, is subject to approval by Monogram's stockholders and other customary closing conditions. The transaction is not contingent on receipt of financing by Greystar. JPMorgan Chase Bank, N.A. has provided a commitment letter to Greystar Growth and Income Fund for $2.0 billion in debt financing for the transaction upon the terms and conditions set forth in such letter. Following payment of the previously announced second quarter dividend on July 7, Monogram will not pay any dividends through the close of the transaction except as required to maintain its REIT status and any such dividend will be deducted from the purchase price. Morgan Stanley & Co. LLC is serving as exclusive financial advisor and Goodwin Procter LLP is serving as legal advisor to Monogram. J.P. Morgan Securities LLC is serving as exclusive financial advisor and Jones Day is serving as legal advisor to Greystar.

**The Proxy Misleads Monogram Stockholders by Omitting Material Information**

32.     On July 28, 2017, Monogram filed the materially misleading and incomplete Proxy with the SEC.  Designed to convince shareholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the Company's expected future value as a standalone entity as evidenced by the Company's financial projections, and the financial analysis underlying the fairness opinion provided by Morgan Stanley & Co LLC ("Morgan Stanley").

*Material Omissions Concerning the Company's Financial Projections*

33.     First, the Proxy discloses four non-GAAP accounting metrics for projected financial information over the years 2017-2023:  EBITDA, Core FFO, AFFO, and Unlevered Free Cash Flow.  However, providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and misleading.

34.     The Proxy fails to disclose the line items underlying EBITDA necessary to reconcile EBITDA to GAAP measures, including (i) operating earnings; (ii) stock-based compensation expense; (iii) interest; (iv) taxes; and (v) depreciation and amortization.

35.     The Proxy fails to disclose the line items underlying Core FFO necessary to reconcile Core FFO back to GAAP net income, including (i) gains (or losses) from sales of property (including deemed sales (if any) and settlements of pre-existing relationships); (ii) depreciation and amortization on real estate assets; (iii) impairment write-downs of depreciable real estate or of investments in unconsolidated real estate partnerships, joint ventures and subsidiaries (if any) that are driven by measurable decreases in the fair value of depreciable real estate assets, and after related adjustments for unconsolidated partnerships, joint ventures and subsidiaries and non-controlling interests.

36.     The Proxy fails to disclose the line items underlying AFFO necessary to reconcile AFFO back to Core FFO, including (i) recurring capital expenditures; (i) straight-line rents; and (iii) stock compensation expense.

37.     The Proxy fails to disclose the line items underlying unlevered free cash flow necessary to reconcile unlevered free cash flow to EBITDA, including (i) capital expenditures; (ii) acquisition costs, and (iii) development costs.

38.     The Proxy must disclose the necessary line items to reconcile these four non-GAAP measures to well-understood GAAP financial metrics.  Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance.

39.     Because of the non-standardized and potentially manipulative nature of non-GAAP measures, when a company discloses information in a Proxy that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

40.     On May 17, 2016, the SEC's Division of Corporation Finance released updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures.  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.  S.E.C. Comp. & Disc. Interps., Question 102.07 (May 17, 2016) https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.  The Proxy makes no effort to account for the failure to reconcile these non-GAAP measures to GAAP metrics.

41.     The Company routinely reconciles its non-GAAP metrics to GAAP, including for funds from operations, in its quarterly and yearly financial reports. For example, in the Form 10-Q filed by the Company on August 3, 2017, the Company provided the chart below, reconciling funds from operations to the GAAP measure of net income:

|  | For the Three Months Ended June 30, | | For the Six Months Ended June 30, | |
|---|---|---|---|---|
|  | **2017** | **2016** | **2017** | **2016** |
| Net income (loss) attributable to common stockholders | $    6.8 | $    (9.2) | $    82.8 | $    (17.5) |
| Real estate depreciation and amortization | 31.6 | 30.9 | 63.3 | 60.8 |
| Gains on sales of real estate | (28.6) | — | (115.3) | — |
| Less: noncontrolling interest adjustments | 2.6 | (9.7) | (7.5) | (19.0) |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| FFO attributable to common stockholders - NAREIT defined | $ | 12.4 | $ | 12.0 | $ | 23.3 | $ | 24.3 |
| | | | | | | | |
| GAAP weighted average common shares outstanding - basic | | 167.1 | | 166.8 | | 167.1 | | 166.8 |
| GAAP weighted average common shares outstanding - diluted | | 168.2 | | 167.6 | | 168.0 | | 167.5 |
| | | | | | | | |
| Net income (loss) per common share - basic and diluted | $ | 0.04 | $ | (0.06) | $ | 0.49 | $ | (0.11) |
| FFO per common share - basic and diluted | $ | 0.07 | $ | 0.07 | $ | 0.14 | $ | 0.15 |

42.     Without disclosure of these reconciling metrics, the Proxy violates SEC regulations and materially misleads Monogram stockholders

43.     These projections were provided to Morgan Stanley, and used by Morgan Stanley, for the purpose of creating a fairness opinion that could then be used in soliciting stockholder approval of the Proposed Transaction.  Because these analyses were presented to the Monogram stockholders as evidence of the fairness of the Proposed Transaction, the omission of the financial projections materially misleads those same stockholders as to the accuracy and value of the analyses.

***Material Omissions Concerning Morgan Stanley's Financial Analyses***

44.     The Proxy describes Morgan Stanley's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Morgan Stanley's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Monogram's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's fairness opinion in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Monogram's stockholders.

45.     With respect to Morgan Stanley's *Comparable Companies Analysis* for Monogram, the Proxy fails to disclose the individual multiples for each of the selected public companies analyzed by Morgan Stanley, as well as the financial performance metrics for each selected company. Without such information, Monogram's stockholders are unable to determine how the multiples used in determining Monogram's value compare to the other companies. The Proxy fails to even disclose the median or mean values for these figures, disclosing only the low and high of each measure. As a result, stockholders are unable to assess whether Morgan Stanley utilized unreasonably low multiples thereby rendering the implied share price ranges set forth in the analyses misleading.

46.     With respect to Morgan Stanley's *Analysis of Selected Precedent Transactions*, the Proxy fails to disclose the individual multiples for each of the selected transactions analyzed by Morgan Stanley, as well as any benchmarking analyses Morgan Stanley performed for Monogram in relation to the target companies. Without such information, Monogram's stockholders are unable to determine how the multiples used in determining Monogram's value compare to the other companies. As a result, stockholders are unable to assess whether Morgan Stanley utilized unreasonably low multiples thereby rendering the implied share price ranges set forth in the analyses misleading.

47.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Monogram**

63.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.     The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Monogram is liable as the issuer of these statements.

65.     The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66.     The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

68.     The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

70.     Because of the false and misleading statements in the Proxy, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

71.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72.     The Individual Defendants acted as controlling persons of Monogram within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Monogram and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

73.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy.

75.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

13

76.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

D.      Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

F.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated:  August 4, 2017               LEVI & KORSINSKY LLP

                                                    <u>/s/ Donald J. Enright</u>
                                                    Donald J. Enright (#MD013551)
                                                    Brian D. Stewart (#19906)
                                                    1101 30th Street NW
                                                    Suite 115
                                                    Washington, D.C. 20007
                                                    Telephone:     (202) 524-4290
                                                    Facsimile:      (202) 333-2121

                                                    *Counsel for Plaintiff*